IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **SHAWN DAVID MEGEHEE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:20-cv-00735-CWB |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction and Administrative Proceedings**

Shawn David Megehee ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act wherein he alleged disability onset as of January 1, 2018 due to chronic obstructive pulmonary disease ("COPD"), emphysema, liver cirrhosis, and blood enzyme imbalance. (Tr. 15, 65-66, 79, 165-69).[2]  The claim was denied at the initial level on January 22, 2019 (Tr. 15, 65-79), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 15, 100-02).  The ALJ heard the case on February 25, 2020, at which time Plaintiff appeared with counsel and gave testimony.  (Tr. 15, 29-57).  A vocational expert also testified at the hearing.  (Tr. 58-62).  The ALJ took the matter under advisement and issued a written decision dated March 12, 2020 that found Plaintiff not disabled.  (Tr. 15-24).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019 (4D).

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2018 through his date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: chronic obstructive pulmonary disease (COPD), emphysema, and erythrocytosis. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant should avoid climbing stairs, ladders, ropes, and scaffolds. The claimant should avoid strong fumes, noxious odors, concentrated dust or gases, and should avoid working in environments with poor ventilation. The claimant should avoid temperature extremes of cold and heat and exposure to steam and high humidity. The claimant should avoid workplace hazards, such as unprotected heights and dangerous moving machinery.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 8, 1969 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have

> performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2018, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 17, 18, 19, 22, 23).

On September 1, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 3; Doc. 15 at p. 9). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, both of the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 10, 11), and the undersigned finds that the case is now ripe for determination pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

**II.     Standard of Review and Regulatory Framework**

Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by

substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of the factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

---

[4] *McDaniel* is a supplemental security income ("SSI") case. Because the same sequence applies when evaluating claims for disability insurance benefits brought under Title II, SSI cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

**III.     Issues on Appeal**

On appeal, Plaintiff argues that the RFC determination that he can perform light work with certain limitations on a sustained and continuous basis was not supported by substantial evidence and that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, John James, M.D.  (Doc. 15 at pp. 6-8).

**IV.     Discussion**

   **A.     RFC Determination**

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1545(b) & (c).  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion.").

Plaintiff contends that no evidence was presented showing that he could perform the exertional requirements of light work, as there was no evidence that he could occasionally lift as much as 20 pounds. (Doc. 15 at p. 6). Plaintiff also asserts that his testimony establishes that he can only walk for 30 minutes at a time and stand for 30 to 45 minutes at a time, and that he must lie down and rest between three to four times per day for 45 minutes to one hour each time—which is inconsistent with an ability to perform even a reduced range of light work. (*Id*.; *see* Tr. 20, 51-53). Plaintiff further argues that the ALJ did not evaluate his ability to perform work on a regular and continuing basis as required by Social Security Ruling 96-8p. (*Id*. at pp. 6-7).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . . .] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

In this case, the ALJ concluded that Plaintiff was capable of performing light work as defined in 20 CFR 404.1567(b)[5] except that: he should avoid climbing stairs, ladders, ropes and scaffolds; he should avoid strong fumes, noxious odors, concentrated dust or gases; he should avoid working in environments with poor ventilation; he should avoid temperature extremes of cold and heat and exposure to steam and high humidity; and he should avoid workplace hazards, such as unprotected and dangerous moving machinery.  (Tr. 19).  It is clear from the detailed analysis of the evidence that the ALJ considered the entire record in determining that RFC. (Tr. 19-22).  The ALJ noted that medical records documented complaints of dyspnea on exertion and chest pain beginning in August 2017, but that diagnostic studies were within normal limits and that Plaintiff was only diagnosed with shortness of breath.  (Tr. 20, 232-41).  The ALJ cited a radiology report from June 2018 that "revealed no cardiopulmonary or pleural abnormality", a chest x-ray in November 2018 that "revealed no acute abnormality of the chest, including normal lung expansion and aeration and no pleural effusions or pneumothorax", and an angiogram from the same time that revealed "no mass, infiltrate, or pleural fluid; no mediastinal mass or adenopathy; no aneurysm, dissection, or pulmonary embolus; and mild calcification of the aorta and ectasia."  (Tr. 20, 277, 340-43).

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "'Frequent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

The ALJ considered Plaintiff's long history of smoking and found that "[d]espite his continued smoking, respiratory examinations of record were generally within normal limits, consistently describing no respiratory distress, lungs clear to auscultation bilaterally, and no dyspnea, wheezes, rhonchi, or rales." (Tr. 20, 270-78, 283-85, 337-374, 381-84, 390-91, 394-96, 412-471, 473-509, 512-23).  Although the ALJ noted that a respiratory examination in November 2019 had shown diminished breath sounds and prolonged expiratory phase (Tr. 20, 518), the ALJ also noted that in December 2019 Plaintiff had subsequently denied symptoms of shortness of breath, chest pain, coughing, wheezing, and dyspnea on exertion.  (Tr. 20-21, 514). The ALJ further noted that a respiratory examination at that time was positive for bibasilar crackles but there were no increased work of breathing and no retractions, rhonchi, rales, of wheezes.  (*Id.*).

The ALJ considered medical records showing that Plaintiff was diagnosed with erythrocytosis and that Plaintiff underwent phlebotomy treatments from September 2018 through March 2019.  (Tr. 21, 411).  The ALJ noted that physical examinations during the relevant period consistently showed no acute distress and musculoskeletal examinations within normal limits. (Tr. 21, 270-78, 283-85, 325-29, 337-374, 381-84, 390-411, 412-471, 473-509, 512-23).  In such regard, the ALJ observed that: in August 2019, Plaintiff felt "pretty good" and denied any changes; in September 2018, Plaintiff felt "pretty good" and his fatigue "comes and goes;" and in December 2019, Plaintiff reported no significant acute complaints and reported feeling "pretty good."  (Tr. 21, 310, 413, 479-83).

The ALJ considered the opinion of the State agency medical consultant, Richard Whitney, M.D., who opined that Plaintiff could perform medium work, could frequently climb ladders, ropes, and scaffolds, and had no other postural, manipulative, visual, communicative, or environmental limitations.  (Tr. 21-22, 74-76).  State agency medical consultants are considered

9

experts in Social Security disability evaluation.  20 C.F.R. § 404.1513a(b)(1).  Nonetheless, the ALJ found Dr. Whitney's opinion unpersuasive and deemed Plaintiff to require light work with additional postural and environmental limitations related to breathing issues.  (Tr. 22).

With respect to Plaintiff's subjective complaints (including pain), such complaints are to be considered to the extent reasonably consistent with objective medical and other evidence.  20 C.F.R. § 404.1529(a).  The agency will consider a claimant's statements about his or her symptoms, along with any description medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").

The regulations set out a two-step process for the evaluation of subjective complaints.  *Id*.; SSR 16-3p, 2017 WL 5180304, at *3.  To establish a disability based on testimony of pain and other symptoms, a claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

Here, Plaintiff failed to cite any objective medical evidence supporting his contention that he could not perform the exertional requirements of light work, and the ALJ found that Plaintiff's allegations seemed "out of proportion to the clinical examinations and medical findings of record":

> While the record supports some degree of limitations with regard to the claimant's breathing difficulties, the objective evidence does not support the extreme limitations reported by the claimant that result in him needing to lay down periodically during the day and the inability to lift more than ten pounds. As noted above, orthopedic issues and the claimant's subjective pain complaints are not substantiated by the objective medical evidence of record, as musculoskeletal examinations were consistently within normal limits (3F, 5F, 9F, 10F, 12F, 13F, 14F, 15F, and 16F).

(Tr. 21). Additionally, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms did not support greater limitations than those accounted for in the RFC:

> In addition to the claimant's limited, routine, and conservative course of treatment, the claimant has retained the ability to perform some daily activities, including limiting mowing of the lawn, shopping in stores, drive an automobile, and taking out the trash (3E and *Testimony*). Additionally, the claimant testified that he was able to go fishing approximately three times since he moved to Alabama two years ago. Thus, the evidence of record wholly supports the finding that the claimant is able to perform work activities on a continuous and sustained basis. The record supports the finding that the claimant's breathing impairments, coupled with the symptoms related to erythrocytosis, limit him to light exertion work that avoids climbing ladders, ropes, or scaffolds; avoids strong fumes, noxious odors, concentrated dust or gases, and work environments with poor ventilation; avoids temperature extremes and exposure to steam and humidity; and avoids workplace hazards, such as unprotected heights and dangerous moving machinery.

(*Id.*).

A plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276. The ALJ considered the entire record when determining Plaintiff's RFC, as the ALJ properly discussed the medical and non-medical evidence of record. Moreover, the ALJ properly considered that Plaintiff had only received conservative treatment. *See Bernard v. Comm'r, Soc. Sec. Admin.*, No. 4:20-

11

CV-01559, 2022 WL 983168, at *9 (N.D. Ala. Mar. 30, 2022) ("'A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.'") (quoting *Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008)); *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 869 (11th Cir. 2019); 20 C.F.R. § 404.1529(c)(3)(v).

As to the argument that the ALJ did not properly evaluate Plaintiff's ability to perform work on a regular and continuing basis as required by SSR 96-8p, the court notes that the ALJ specifically found that "the evidence of record wholly supports the finding that the claimant is able to perform work activities on a continuous and sustained basis." (Tr. 21). The ALJ provided a detailed RFC analysis and determined that Plaintiff retained the RFC to perform "light work" with certain limitations. The ALJ discussed Plaintiff's alleged limitations, as well as Plaintiff's treatment history, Plaintiff's testimony, Plaintiff's daily activities, and all of the medical opinions in the record. The resulting decision that Plaintiff can perform "light work" as defined in 20 C.F.R. § 404.1567(b) implicitly encompassed the requirement that Plaintiff is capable of working on a regular and continuing basis. *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (noting that the ALJ could have been more specific and explicit in his findings, the court concluded that "the ALJ complied with SSR 96-8p by considering [plaintiff's] functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels" and that "the ALJ's analysis of the evidence and statement that [plaintiff] could perform light work indicated how much work-related activity she could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday'") (citing SSR 83–10); *J.P. v. Comm'r of Soc. Sec. Admin.*, No. 120CV12, 2021 WL 1894146, at *3 (M.D. Ga. Mar. 19, 2021) ("[I]t is well 'settled now that reviewing courts generally assume that administrative [RFC] assessments include *implicit* findings of ability to

work on a regular and continuing basis.'") (citation omitted and emphasis in original); *Shell v. Kijakazi*, No. 20-CV-62527, 2022 WL 4238248, at *6 (S.D. Fla. Sept. 5, 2022), *report and recommendation adopted*, No. 20-62527-CIV, 2022 WL 4235045 (S.D. Fla. Sept. 14, 2022).

The court's review confirms that the RFC determination is supported by substantial evidence. The ALJ properly considered all of the relevant evidence in accordance with SSR 96-8p and sufficiently explained the basis of the decision.

### B. Failure to Consider the Opinions of Dr. John James

Plaintiff next argues that the ALJ improperly ignored and gave no weight to the opinions of treating physician Dr. John James. (Doc. 15 at p. 8). On July 26, 2018, Dr. James indicated on an Alabama Department of Human Resources Food Assistance Program form that Plaintiff was unable to work without restrictions due to his COPD. (Tr. 188, 287). On August 7, 2018, Dr. James similarly stated by letter that "Our patient Shawn Megehee is unable to work and perform any and all job duties due to his medical condition of Secondary polycythemia." (Tr. 196). However, the ALJ determined that "[t]his particular opinion is on an issue reserved for the Commissioner, thus it is inherently neither valuable nor persuasive." (Tr. 22).

Because Plaintiff's claim was filed on July 17, 2018 (Tr. 15), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations no longer use the phrase "treating source," but instead use "your medical source(s)." *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a);

13

*Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."  *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(a) & (c).  "The most important factors . . . [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency."  20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors."  *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022).  "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors."  *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)).  "The ALJ may but is not required to explain how he considered the other remaining factors."  *Id*. (citing 20 C.F.R. § 404.1520c(b)(2)).  And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Plaintiff's argument fails for several reasons under the revised regulations. As an initial matter, and as correctly observed by the ALJ, Dr. James's statements that Plaintiff was "unable to work and perform any and all job duties due to his medical condition of Secondary polycythemia" constitute a conclusion reserved to the agency. *See, e.g., Clark v. Kijakazi*, No. 3:21-CV-02, 2022 WL 3756908, at *4 (M.D. Ala. Aug. 30, 2022); *Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017) ("A medical opinion that a claimant is disabled constitutes an opinion on an issue reserved to the Commissioner and is not controlling."). Only the agency is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." *See* 20 C.F.R. § 404.1527(d)(1). "A statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that [the agency] will determine that [the claimant is] disabled." *Id.*; 20 C.F.R. § 404.1520b(c)(3) ("[W]e are responsible for making the determination or decision about whether you are disabled"); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge … is responsible for assessing your residual functional capacity"). The regulations even expressly provide that the agency "will not provide any analysis about how [it] consider[s] such evidence" because it "is inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled … under the Act." 20 C.F.R. § 404.1520b(c).

Second, under the revised regulations, the term "medical opinion" is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding

15

> appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Dr. James's conclusory statements do not assess the extent to which Plaintiff can perform any particular function in a work setting and therefore would not constitute a "medical opinion" under the regulations so as to require a specific articulation of consideration and persuasiveness. 20 C.F.R. § 404.1513(a)(2); *Dye v. Comm'r of Soc. Sec.,* No. 5:20-CV-459, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (finding that doctor's statements were not medical opinions as the doctor's letter did not assess the extent to which the plaintiff could perform any particular function in a work setting, and therefore did not constitute "medical opinions" for purposes of the applicable regulatory regime); 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record.").[6]

Lastly, even assuming that Dr. James's statements did constitute medical opinions, the ALJ is no longer required (or allowed) to assign specific weight to a medical opinion based on a formal hierarchy. *Morris v. Soc. Sec. Admin., Comm'r*, No. 2:21-CV-00029, 2022 WL 303303, at *3 (N.D. Ala. Feb. 1, 2022) ("The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical

---

[6] The ALJ was not required to discuss Dr. James's statements separately. Even if the statements are deemed to constitute one or more "medical opinion(s)", the revised regulations provide that the ALJ shall consider one or more medical opinions from the same medical source together. *See* 20 C.F.R. § 404.1520c(b)(1).

opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources.'") (quoting 20 C.F.R. § 404.1520c(a)). The ALJ thus did not err by not giving controlling weight to Dr. James's statement or for not articulating good cause for rejecting it.

An ALJ's determination is required to be based on all evidence in the record. *See, e.g., Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."). *See also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). The record sufficiently reflects that the ALJ considered the records of Dr. James. Accordingly, the court concludes that Plaintiff has not shown any error with respect to the ALJ's treatment of the statements made by Dr. James.

**V.      Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the court finds that the Commissioner's decision is due to be AFFIRMED. A separate judgment will issue.

DONE this the 24th day of October 2022.

CHAD W. BRYAN
UNITED STATES MAGISTRATE JUDGE